IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL SWISHER,

                Plaintiff,

                                                  Civil Action 2:25-cv-00434
      v.                                   District Judge Edmund A. Sargus
                                                     Magistrate Judge Kimberly A. Jolson

APEX MARKETING MANAGEMENT
INC., et al.,

                Defendants.

## OPINION & ORDER

Before the Court is Defendant's Motion to Quash Third-Party Subpoenas (Doc. 35).  For the following reasons, the Motion is **GRANTED in part and DENIED in part**.  The parties are **ORDERED** to confer and file a joint status report within fourteen (14) days, as detailed herein.

## I.    BACKGROUND

This diversity action concerns three men and their three-shareholder company, Apex Marketing Management Inc. ("Apex").  (Doc. 1).  As alleged, Plaintiff Michael Swisher and Defendants Scott Patterson and Cody Stokes formed Defendant Apex, an Ohio direct mail marketing corporation, on December 15, 2020.  (*Id.* at ¶¶ 3, 10).  The three were the company's only shareholders, and Swisher served as the Chief Business Officer.  (*Id.* at ¶¶ 2, 10; *see also id.* at ¶¶ 4 (alleging Patterson serves as Chief Executive Officer and owns 51% of Apex's shares), 5 (alleging Stokes serves as Chief Financial Officer and owns 24.5% of Apex's shares)).  At the time of formation, Apex had only one client: JPMorganChase ("JPMC").  (*Id.* at ¶ 11).  Swisher brought JPMC into the company, and, according to Swisher, JPMC stood as the company's largest and most profitable account throughout his tenure with Apex.  (*Id.* at ¶¶ 11–12).

From the start, Swisher "was in charge of Envelope production and sales" at Apex, while

"Patterson was in charge of the Direct-Mail Lettershop production and sales." (*Id.* at ¶ 13). But Swisher "never saw an Apex profit and loss statement," nor were there "regular meetings with all three shareholders to discuss the financial condition of the company." (*Id.* at ¶¶ 14–15). Still, between 2020 and 2023, Patterson's Direct-Mail Lettershop production and sales expanded to several clients and was doing well enough that Apex hired four employees assigned to that area. (*Id.* ¶ 16).

In July 2023, the three shareholders agreed that each would receive a $200,000 annual salary, plus disbursements. (*Id.* at ¶ 17). Swisher received disbursements only through February 2024. (*Id.* at ¶ 18). At the same time, Swisher "knew his side of the business . . . was flourishing." (*Id.* at ¶ 19). Specifically, the JPMC account generated over $1,000,000 in profits in 2024 alone. (*Id.* at ¶ 20). Swisher also expanded Envelope production and sales to two more clients. (*Id.* at ¶ 21). Because of this, in June 2024, Swisher suggested that the three shareholders take a raise. (*Id.* at ¶ 22). Patterson responded that "they might discuss that in December" of that year. (*Id.*).

According to the Complaint, despite Swisher's success in his area of Apex, all was not rosy. Part way through 2024, Patterson's Direct Mail Lettershop "had lost all but its largest account. Yet no cost control measures were taken." (*Id.* at ¶ 23 (also stating Direct-Mail Lettershop maintained its four employees)). Still, because of the "continued profits" in Envelope sales and production, Swisher again suggested the three receive a raise, a disbursement, or a year-end bonus. (*Id.* at ¶ 24).

Around that same time, Patterson circulated company bylaws by email. (*Id.* ¶ 25). While Stokes signed and returned the bylaws, Swisher did not. (*Id.* ¶¶ 25–26 (also alleging Patterson told Swisher that the three never signed original corporate bylaws)). Then, on January 3, 2025, Patterson initiated a shareholder meeting via phone. (*Id.* at ¶ 28). During the call, Patterson and

Stokes "stated that, as a purported quorum, they had made the decision to terminate Swisher's employment as Chief Business Officer of Apex." (*Id.*).

Following his termination, Swisher alleges he was not paid, and is still owed, $18,000 for services rendered in December 2024. (*Id.* at ¶ 29–30). In February 2025, Swisher's then-counsel sent a letter to Apex demanding the $18,000 and requesting books and records under Ohio law. (*Id.* at ¶ 33). Three days later Apex sent a letter of its own, alleging that Swisher engaged in activities in violation of his employment contract by "making 'disparaging remarks' to 'vendors and known associates of Apex.'" (Doc. 1 at ¶¶ 35, 36 (alleging Swisher had no employment agreement with Apex)). Then, Apex refused to produce the books and records and offered to purchase Swisher's 24.5% interest in the company for $2,000. (Doc. 1 at ¶ 37). Swisher again requested the books and records, which Apex again dismissed as "vexatious." (Doc. 1 at ¶¶ 41–42). Having no luck obtaining either the requested books and records or the $18,000 owed for services rendered, Plaintiff sued. (Doc. 1).

For Apex's alleged wrongs, Plaintiff brings claims for denial of access to books and records, Ohio Rev. Code § 1701.37; denial of annual financial statements, Ohio Rev. Code § 1701.38; unjust enrichment; and breach of fiduciary duty. (Doc. 1 at ¶¶ 43–71). Plaintiff seeks a declaratory judgment, injunctive relief in the form of an order compelling Apex to produce books and records, monetary damages, and attorneys' fees. (*Id.* at 11–13).

After counsel's appearance, Defendants filed a motion to strike and a motion to dismiss for failure to state a claim and lack of jurisdiction. (Doc. 13 (seeking to strike letters attached to the Complaint as inadmissible under Federal Rule of Evidence 408 and Local Rule 16.3(c)); Doc. 14 (arguing Plaintiff failed to meet the amount in controversy jurisdictional requirement)).

On June 13, Plaintiff also issued seven document subpoenas to third parties. (Doc. 20; *see*

*also* Doc. 20-1 (subpoenas issued to Frank G. Love Envelopes, Inc. ("Love Envelopes"); Jetson Specialty Marketing Services, Inc. ("Jetson Marketing"); SERV Logistics LLC ("SERV"); Savannah Bank, N.A. ("Savannah Bank"); Schroedel, Scullin & Bestic, LLC ("Schroedel"); JP Morgan Chase Bank, N.A. ("JPMCB"); and KeyCorp)). Those subpoenas are the subject of the Motion at bar.

In response to the parties' notification that disputes arose concerning the subpoenas, the Court stayed the subpoenas' response deadlines and ordered the parties to confer. (Docs. 16, 21). When it became clear the parties' disputes were intractable, the Court ordered Defendants to file a motion to quash and set a briefing schedule. (Doc. 32). This matter is ripe for review. (Docs. 35, 36, 37).

## II.    STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas and provides that the court must, upon motion, quash or modify a subpoena if it fails to allow a reasonable time to comply, requires a nonparty to travel more than 100 miles, requires disclosure of privileged or protected material, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Additionally, a court may quash or modify a subpoena if compliance would disclose "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(b)(i). "The party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).

When a subpoena is directed at a nonparty, as here, the Court must decide first whether the party moving to quash the subpoena has standing. Generally, a party has no standing to quash a subpoena directed at a nonparty, but an exception exists where the party seeking to quash claims a "personal right or privilege with regard to the documents sought." *Waite, Schneider, Bayless &*

*Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013). (citation omitted). A mere claim of personal right or privilege does not automatically confer standing. Indeed, "[t]he party seeking to quash a subpoena bears a heavy burden of proof." *Ajuba Int'l, LLC v. Saharia*, No. 1:11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014). To meet that heavy burden, the movant must make more than "conclusory" assertions of an interest or privilege. *See Hamm v. Cunningham*, No. 1:12CV124, 2012 WL 13027079, at *1 (N.D. Ohio May 16, 2012). Without standing, a party may not challenge the subpoena on any ground, including undue burden or relevance. *See Riding Films, Inc. v. John Does 129–193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) (collecting cases).

## III.   DISCUSSION

As stated, Defendants seek to quash seven third-party document subpoenas. Broadly speaking, the subpoenas pursue three categories of documents and related communications: (1) bank records; (2) vendor contracts, invoices, and payment histories; and (3) tax documents. More specifically, the subpoenas request production of the following documents.

From Savannah Bank, Plaintiff seeks all monthly and annual statements for any account associated with any Defendant; all documents that refer or relate to any loan application made by any Defendant; all documents that refer or relate to any line of credit application made by any Defendant; and all communications between the third party and any Defendant. (*Id.* at 25–32).

From JPMCB, Plaintiff seeks all monthly and annual statements for any account associated with Defendants, a specific account number, or nonparty AIC Health LLC ("AIC Health"); all documents that refer or relate to any loan application made by any Defendant or AIC Health; all documents that refer or relate to any line of credit application made by any Defendant or AIC Health; all communications between JPMCB and any Defendant or AIC Health; any contracts

between JPMCB and Apex for direct-mail services provided by Apex; and all communications between JPMCB and any party related to direct-mail services provided by Apex. (*Id.* at 41–49).

Finally, from KeyCorp, Plaintiff seeks all monthly and annual statements for any account associated with any Defendant, with a specific account number, or AIC Health; all documents that refer or relate to any loan application made by any Defendant or AIC Health; all documents that refer or relate to any line of credit application made by any Defendant or AIC Health; and all communication between KeyCorp and any Defendant or AIC Health. (*Id*. at 50–57).

From Apex's vendors, Love Envelopes, Jetson Marketing, and SERV Logistics, Plaintiff seeks all non-privileged documents related to any party, all contracts between the third party and Apex; all invoices associated with Apex; all documents reflecting payments made by Apex to the vendor; and all communications between the vendor and any party, including communications regarding non-payment of invoices. (Doc. 20-1 at 1–24).

From Apex's accounting firm, Schroedel, Plaintiff seeks all non-privileged documents relating to any party in this case; all tax returns and documents related to and/or relied upon in preparing all tax returns of any Defendant; all non-privileged accounting documents associated with any Defendant; all non-privileged communications between the third party and any Defendant referring or relating to Plaintiff; and all documents and/or communications related to the scope of the third party's representation of any Defendant. (*Id.* at 33–40).

Defendants' Motion argues they have standing to challenge all seven subpoenas, and each should be quashed for seeking irrelevant, disproportional information and imposing an undue burden and risk of competitive harm. (Doc. 35). Defendants further assert that the subpoenas are premature considering the pending motion to dismiss. (*Id.*). Plaintiff disagrees on all fronts. The Court begins with Defendants' standing and timing arguments before turning to the substance of

the subpoenas.

### A.    Standing

Whether Defendants have standing to challenge the seven subpoenas is a "threshold issue" the Court must decide before addressing the merits of Defendant's Motion.  *Davis*, 2013 WL 146362, at *5.  As stated, a party does not typically have standing to challenge a subpoena issued to a third party.  *Id.*  But where a party correctly asserts "some personal right or privilege with regard to the documents sought," that party has a claim to standing.  *FIP Realty Co. v. Ingersoll-Rand plc*, No. 2:19-CV-3291, 2020 WL 6060412, at *2 (S.D. Ohio Oct. 14, 2020) (citation omitted).  "Personal rights or privileges supporting a claim to standing 'have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records.'"  *Riding Films, Inc*, 2013 WL 3322221 (citation omitted).

In their Motion, Defendants argue they have standing to challenge the subpoenas because they broadly seek "Apex's confidential business records, including corporate banking, accounting, and vendor-related documents, in which Apex holds a direct interest."  (Doc. 35 at 6).  Further, the subpoenas seek "personal financial records for both Patterson and Stokes."  (*Id.*).

As support, Defendants cite two cases where courts found a party had standing to challenge a subpoena seeking banking records.  *See SASC, LLC v. Sch. Supply Connection, Inc.*, No. 3:23-CV-00083, 2023 WL 6290071 (S.D. Ohio Sept. 27, 2023) (finding a party has a personal right or privilege because the subpoena sought its "corporate banking records"); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (finding a personal right "with respect to [the party's] bank account records at the subpoenaed banks").  The Court agrees that this authority supports Defendants' standing for the three subpoenas seeking corporate and personal banking records.  (*See* Doc. 20-1 at 25–32 (subpoena directed at Savannah Bank), 41–49 (subpoena directed

at JPMCB), 50–57 (subpoena directed at KeyCorp)).  But they do not support standing for the other four subpoenas which do not, on their face, seek the same kinds of records.

Considering first the subpoenas directed at Apex's vendors, Love Envelopes, Jetson Marketing, and SERV, Plaintiff seeks contracts, invoices, and related documents and communications each entity had with the parties in this case.  (Doc. 20-1 at 1–24).  Defendants have not explained how these documents can be classified as either corporate or personal "banking records."  *Cf. SASC, LLC*, 2023 WL 6290071, at *2 (considering a subpoena seeking account statements, account opening documents, and communications about wire transfers or withdrawal requests from a bank); *Transcor, Inc.*, 212 F.R.D. at 591 (considering a subpoena seeking operational checking account and payroll account information from a bank).  They attempt to save their standing argument for these subpoenas by claiming that all the requested documents, including communications and financial data, are "interconnected" and "implicate Defendants' recognized rights and privileges."  (Doc. 37 at 2).  And the contracts and invoices at issue are "integral to Apex's confidential business relationships and competitive position" and "central to [Apex's] business, in which Defendants have a clear proprietary interest."  (*Id.*).  However, these broad arguments, without any case support whatsoever, do not meet Defendants' "heavy burden of proof."  *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943 (S.D. Ohio Apr. 14, 2022) (citation omitted).  Indeed, to meet that heavy burden, Defendants must make more than conclusory assertions of an interest or privilege.  *Cf. Hamm*, 2012 WL 13027079, at *1 (finding that "conclusory" assertions of confidentiality failed to satisfy the heavy burden of proof). That is all they offered here.

Turning to the subpoena directed at Schroedel seeking Defendants' tax and accounting information (*see* Doc. 20-1 at 33–40), Defendants arguably have not made a sufficient standing

showing either. (Doc. 35 (citing no cases justifying standing for personal or business tax records)). But there is enough caselaw from this Court to find Defendants have standing to challenge the Schroedel subpoena. *See, e.g.*, *Hunter v. Shield*, No. 2:18-CV-1097, 2020 WL 6484055, at *12 (S.D. Ohio Nov. 4, 2020) (finding subpoenas seeking personal and business tax records confer standing, as the party had a personal right or privilege in such information); *PCA-Corrs., LLC v. Akron Healthcare LLC*, No. 1:20-CV-428, 2021 WL 2043118, at *1 (S.D. Ohio May 21, 2021) (finding a request for a party's accountant to produce information pertaining to tax records conferred standing to move to quash a subpoena); *see also Shepp Elec. Co., Inc. v. Boyer*, No. 1:20 CV 452, 2022 WL 22897309, at *2 (N.D. Ohio Mar. 9, 2022) (finding standing to challenge a subpoena "because the requested discovery would require disclosure of [a party's] tax records and other personal financial information"); *Cawley v. Eastman Outdoors, Inc.*, No. 1:14-CV-00310, 2014 WL 4656381, at *2 (N.D. Ohio Sept. 16, 2014) ("Courts have held that a corporation has a personal right in financial records such as bank statements sufficient to establish standing. The tax returns and audited financial statements sought here are in the same vein." (citations omitted)).

Accordingly, the Court concludes that Defendants have standing to challenge only those subpoenas that seek personal and corporate banking and tax records: the subpoenas directed at Savannah Bank, JPMorgan Chase Bank, KeyCorp, and Schroedel ("Bank and Tax Record Subpoenas"). With this conclusion in mind, the Undersigned addresses the merits of Defendants' Motion for those four subpoenas only. The Court **DENIES** Defendants' request to quash the other three on standing grounds.

### B.    Timing

Before turning to the merits of the Bank and Tax Record Subpoenas, the Court considers Defendants' argument that the subpoenas are premature. (Doc. 35). Their argument is two-fold. First, Defendants take issue that Plaintiff initially issued the nonparty subpoenas prior to a Rule 26(f) discovery conference or any party discovery, "contravening the orderly progression of litigation." (*Id.* at 5, 6 (noting as of the Motion, Plaintiff still had not issued party discovery)). But it seems the subpoenas were reissued after the Rule 26(f) conference. (*See* Doc. 17 (noting the discovery conference was held on June 12); Doc 20 (subpoenas issued on June 13)). Further, the Federal Rules do not proscribe such rigid, sequential discovery. Rather, "methods of discovery may be used in any sequence[.]" Fed. R. Civ. P. 26(d)(3)(A). That Defendants disagree with Plaintiff's discovery strategy, or feel that another way is more efficient, is not a compelling reason to quash the subpoenas.

Defendants make their second prematurity argument against the backdrop of their pending motion to dismiss. (Doc. 35 at 5; *see also* Doc. 14 (arguing Plaintiff's Complaint does not meet the amount-in-controversy jurisdictional requirement and fails to state a claim)). In their view, quashing the subpoenas makes efficiency sense considering their challenge to jurisdiction and the sufficiency of the pleadings. (Doc. 35 at 5–6). They argue that "[c]ourts routinely stay or quash discovery pending dispositive motions that could narrow or eliminate the need for such discovery, promoting judicial efficiency." (*Id.* at 5). But this is not necessarily true. For one, Defendants did not provide a single case in which a court quashed a non-party document subpoena because of a pending dispositive motion. (*Id.* at 5–6 (citing *Libertarian Party of Ohio v. Wilhelm*, No. 2:19-CV-2501, 2019 WL 4885876 (S.D. Ohio Oct. 3, 2019) (staying discovery, including a noticed deposition of a defendant, pending the resolution of a dispositive motion))). For another, "the fact

that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery." *Libertarian Party of Ohio*, 2019 WL 4885876, at *1 (quoting *Novel v. Lowe*, No. 2:13-CV-703, 2014 WL 559088, at *1 (S.D. Ohio Feb. 11, 2014)) (citation modified); *Williams v. New Day Farms, LLC*, No. 2:10-CV-0394, 2010 WL 3522397, at *2 (S.D. Ohio Sept. 7, 2010) ("[U]nless it is patent that the case lacks merit and will almost certainly be dismissed, a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion."); *see also Ohio Valley Bank Co. v. MetaBank*, No. 2:19-CV-191, 2019 WL 2170681, at *2 (S.D. Ohio May 20, 2019) ("A stay of discovery for any reason is a matter ordinarily committed to the sound discretion of the trial court." (citation omitted)).

Still, Defendants assert that a jurisdictional dismissal would eliminate the basis for the subpoenaed discovery or at least narrow the need for the materials. (Doc. 35 at 6; *see also* Doc. 37 at 5–6). So, quashing the subpoenas now would allow Apex and third parties to avoid unnecessary expense and burden. (*Id.*). Yet Plaintiff claims that if the Court were to rule that he is without jurisdiction to bring his case in federal court, "at most the case will transfer to a different forum, where the discovery will still be available for use." (Doc. 36 at 9). Though Defendants call such a claim speculative, this Court has acknowledged that jurisdictional challenges present "even less reason to stay discovery pending [the dispositive motion's] outcome" for this very reason. *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2009 WL 3210379, at *2 (S.D. Ohio Sept. 30, 2009) (commenting on motions to dismiss for lack of subject matter jurisdiction, personal jurisdiction, or proper venue). That is, "even if [Defendants' motion to dismiss] is successful, this case will proceed somewhere, and a stay of discovery would 'not really save . . . any resources in the long run, but would delay the ultimate resolution of the case in this Court, should it remain here, and might have a similar effect on any state court case filed.'" *Ohio Valley Bank Co.*, 2019

11

WL 2170681, at *3 (citation omitted). That logic extends here.

Ultimately, the Court declines to quash the subpoenas or extend its discretion to further stay the compliance deadline because of the pending dispositive motion alone. However, the Court also considers whether Defendants' merits arguments justify an order quashing the subpoenas.

## C. Risk of Competitive Harm

Defendants first assert the nonparties' compliance with the Bank and Tax Record Subpoenas would reveal Apex's confidential business information, to Defendants' detriment. (Doc. 35 at 9). In particular, Defendants claim that that disclosure of Apex's financial records and "sensitive data" poses a "heightened risk of competitive harm" and "could irreparably damage its market position" given Plaintiff's "adversarial" position. (Doc. 37 at 5). Here, Defendants seem to request the Court quash the subpoenas under Federal Rule of Civil Procedure 45(d)(3)(b)(i), which permits such an action when a subpoena requires disclosure of confidential commercial information. Even still, "it is not axiomatic that relevant documents are quashed on the sole basis that they contain confidential commercial information." *Covert Mfg., Inc. v. Covert Innovations, LLC*, No. 1:21-CV-1682-DAR, 2024 WL 904404 (N.D. Ohio Mar. 1, 2024). To bring the subpoenas into the realm of consideration, Defendants must initially demonstrate that the information at issue "falls into a protected category and that disclosure may be harmful," then the burden shifts to Plaintiff to establish relevance and need. *State Farm Mut. Ins. Co. v. Policherla*, No. 08-13939, 2009 WL 2170183, at *3 (E.D. Mich. July 20, 2009).

Even assuming Defendants' banking or tax records are confidential commercial information, their assertion that Apex would suffer competitive harm and irreparable damage from disclosure is too conclusory. *Covert Mfg., Inc.*, 2024 WL 904404, at *6 (collecting cases); *cf. ACT, Inc. v. Worldwide Interactive Network, Inc.*, No. 3:18-CV-186-TRM-HBG, 2019 WL

13092227, at *13, (E.D. Tenn. May 17, 2019) ("Defendant has not shown with specific facts that Plaintiff will use any potential subpoena to harm Defendant's business relationships or that any potential disclosures will harm Defendant."). Further, the parties stipulated to, and the Court signed, a protective order in this case. (Doc. 27). Though Defendants imply that the protective order is not enough to protect their interests in any confidential information, they do not provide a factual basis for that assertion. In other words, Defendants have not shown that disclosure of the subpoenaed information, even when subject to a protective order, would be harmful. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013). Consequently, the Court declines to quash the subpoenas on this basis.

### D.    Undue Burden

Defendants next submit that the Bank and Tax Record Subpoenas pose an undue burden on them and subpoenaed third parties. (Doc. 35 at 9). Federal Rule of Civil Procedure 45 requires that parties issuing subpoenas "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Relatedly, the Rule instructs a court to modify or quash a subpoena where compliance with the subpoenas subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). "What constitutes an 'undue burden' is assessed on a case-by-case basis." *In re Risner*, 338 F.R.D. 380, 382 (S.D. Ohio 2021) (citing *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250–51 (6th Cir. 2018)). "Factors considered include 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Id.* (citation omitted). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a

factor.'" *In re: Mod. Plastics Corp.*, 890 F.3d at 251 (citation omitted). "Ultimately, '[i]f the subpoenaed nonparty asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a clearly defined and serious injury.'" *Meyer v. Bank of Am., N.A.*, No. 2:18-CV-218, 2018 WL 6436268, at *4 (S.D. Ohio Dec. 7, 2018) (citation omitted). Simply put, Defendants have not met their burden here either.

The problem is that no one—not Defendants, not Plaintiff, not the Court—knows what the burden of complying with the subpoenas is. While Defendants assert that on their face, the subpoenas will require "extensive document production" of "voluminous, irrelevant materials" and will "strain[] the resources of the Defendants and the subpoenaed entities," these assertions are mere speculation. (Doc. 35 at 9). It is not clear to the Court how producing documents would require Defendants to exert "time, cost, and effort" to comply, when they themselves are not responsible for producing documents. (*Id.*); *see Meyer*, 2018 WL 6436268, at *5 (noting Rule 45 requires the issuing party to take reasonable steps to avoid imposing undue burden or expense on the nonparty subject to the subpoena—not an opposing party—and collecting cases); *Georgia-P. LLC v. Am. Intern. Specialty Lines Ins. Co.*, 278 F.R.D. 187 (S.D. Ohio 2010) ("Rule 45 focuses on the burden imposed on the recipient of the subpoena."). At any rate, Defendants' assertion that the subpoenas will, by their nature, require overly burdensome production is too conclusory for the Court to quash the subpoenas on these grounds. *Cf. Cahoo v. SAS Inst. Inc.*, 377 F. Supp. 3d 769, 775 (E.D. Mich. 2019) (stating a party's assertion that production may contain voluminous pages that are not relevant or informative was insufficient without more particulars).

14

## E.      Relevance

Defendants next assert that the Bank and Tax Record Subpoenas seek information irrelevant to Plaintiff's breach of fiduciary duty and shareholder rights claims.  (Doc. 35 at 7–9). In considering relevance, a Rule 45 subpoena is subject to the same general relevancy standard as applied to discovery sought under Federal Rule of Civil Procedure 26(b)(1).  *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *2 (N.D. Ohio Feb. 13, 2008). That is, a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1). Central to the relevancy question, then, are Plaintiff's claims, including his claim for breach of fiduciary duty.  Under Ohio law, to succeed on a breach of fiduciary duty claim, a litigant must establish "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom."  *Camp St. Mary's Ass'n. of W. Ohio Conf. of the United Methodist Church, Inc. v. Otterbein Homes*, 889 N.E.2d 1066, 1076 (Ohio App. 2008) (citation omitted).

Defendants say the Bank and Tax Record Subpoenas are irrelevant to this action because requests for "all communication" or all banking activities "lack any nexus to the specific allegations in Plaintiff's complaint[.]"  (Doc. 35 at 8).  And the subpoenas "fish[] for information unrelated to fiduciary duties or shareholder rights."  (*Id.*).  They further assert that the requested documents and communications from JPMCB and KeyCorp related to non-party AIC Health are wholly irrelevant to this action.  (Doc. 37 at 3).  The Court concludes some of this information has relevance at least to the second element of Plaintiff's fiduciary duty claim: whether a failure to observe a duty arising from a fiduciary relationship occurred.

As alleged, Defendants Patterson and Stokes used their majority control of Apex, a close

15

corporation, to devalue both the corporation and Plaintiff's 24.5% interest. (Doc. 1 at ¶¶ 65–71).

They further allegedly denied Plaintiff disbursements and removed him from Apex's payroll

despite his client base producing substantial profits for the company. (*Id.*).  Against this backdrop,

Defendants' banking records and tax records have baseline relevance to how Apex compensated

controlling shareholders as well as the general financial health of Apex.  Both potentially inform

the extent to which Apex and Plaintiff's interest were devalued, if at all, and whether Defendants

obtained a benefit from Apex denied to Plaintiff.  *Cf. McLaughlin v. Beeghly*, 617 N.E.2d 703, 706

(Ohio App. 1992) ("When a controlling shareholder exercises that control to derive a personal

benefit not available to those shareholders out of power, the controlling shareholder has breached

his heightened fiduciary duty." (citation omitted)).

Less compelling is Plaintiff's request for documents and communications between the

subpoenaed party and nonparty AIC Health.  (*See, e.g.*, Doc. 20-1 at 48, 57).  According to

Plaintiff, AIC Health is a company operated by Defendant Patterson under the Apex "brand

umbrella."  (Doc. 36 at 6); *see also* https://aichealth.net/team/ (naming Scott Patterson as CEO).

So, he argues, bank records related to AIC Health can speak to whether Defendants diverted money

earned by Apex to AIC Health for the exclusive benefit of Defendant Patterson.  (Doc. 36 at 4

stating the banking "records will also establish how each of the Defendants benefited from, or

contributed to, other companies operated by Patterson under the 'Apex' brand umbrella")).

Plaintiff contends this type of diversion is not uncommon in breach of fiduciary cases.  *Cf.*

*McLaughlin*, 617 N.E.2d at 706 (finding that a shareholder using a corporation's funds to support

his other enterprises was evidence supporting a trial court's finding that that the shareholder

breached a fiduciary duty).  Yet this supposition is unmoored from Plaintiff's breach of fiduciary

duty claim as alleged.

Up front, AIC Health is not mentioned in Plaintiff's Complaint. (*See generally* Doc. 1). Nor are the other companies under the Apex "brand umbrella" that Plaintiff describes in his response brief. (Doc. 36 at 5). Nowhere in the Complaint does Plaintiff allege that Patterson engaged in conduct similar to that in *McLaughlin*—that is, that Patterson used Apex funds to support his other enterprises. In other words, Plaintiff's speculation is not linked to the Complaint or any other part of the record before the Court.

For certain, "[r]elevance for discovery purposes is extremely broad." *William F. Shea, LLC v. Bonutti Rsch., Inc.*, No. 2:10-CV-615, 2011 WL 1560660, at *2 (S.D. Ohio Apr. 25, 2011). But Plaintiff's mere showing that Patterson held a dual position as CEO for both AIC Health and Apex Marketing does not create relevancy where it otherwise does not exist. Still, the Court observes that as discovery develops, AIC Health's banking records could become relevant and proportional to the needs of this case. Accordingly, JP Morgan Chase Bank and KeyCorp are **ORDERED** to preserve the records sought in the subpoenas (Doc. 20-1 at 41–57), to the extent they exist. Plaintiff is **ORDERED** to serve this Order on those nonparties to facilitate this preservation.

Consequently, the Court **QUASHES** the subpoenas to the extent they expressly seek documents or communications related only to AIC Health LLC. Otherwise, the Court finds the Bank and Tax Record Subpoenas seek relevant information.

### F. Proportionality

Defendants further challenge the Bank and Tax Record Subpoenas as seeking discovery disproportional to the needs of this case. Specifically, Defendants contend that the sweeping categories of documents, (*see, e.g.*, Doc. 20-1 at 48 ("all communications between You and any of the Defendants.")), and the five-year period are overbroad and exceed the scope of Plaintiff's claims. (Doc. 35 at 8; Doc. 37 at 3–4). The Court acknowledges that, on their face, the scope of

the subpoenas is significant.  At the same time, the Court acknowledges Plaintiff's argument that he has no access to information related to Apex's financial condition or Defendants' financial relationship with Apex.  (Doc. 36 at 6).  The Court agrees this information has importance to resolving the disputes in this action.

The Court views scope of the subpoenas as a point of opportunity for the parties to collaborate further.  Accordingly, the parties are **ORDERED** to confer on the scope of the Bank and Tax Record Subpoenas.  The parties are required to file a status report on their conference, as detailed below.  Additionally, the compliance deadline for the Bank and Tax Record Subpoenas will remain stayed while the parties confer.

*****

In sum, Defendants have standing to challenge on the subpoenas issued to Savannah Bank JPMorgan Chase Bank, KeyCorp, and Schroedel, Scullin & Bestic, LLC.  To the extent those subpoenas expressly seek documents or communication related **only** to nonparty company AIC Health LLC and the subpoenaed third party, the Court **QUASHES** the subpoenas.  Still, JP Morgan Chase Bank and KeyCorp are **ORDERED** to preserve the records sought in the subpoenas (Doc. 20-1 at 41–57), to the extent they exist.  Plaintiff is **ORDERED** to serve this Order on those nonparties.

The parties are **ORDERED** to confer on the remaining scope of those four subpoenas. They are **ORDERED** to file a joint status report **within fourteen (14) days**.  If disputes still remain, each side should articulate their understanding of the residual disputes and their legal position.  The Court intends to rule on any outstanding disputes based on this report.  The Court expects the parties to collaborate in good faith.

The Court otherwise **DENIES** Defendants' Motion to Quash.  The Court **LIFTS** the stay

18

on the response deadlines for the subpoenas issued to Frank G. Love Envelopes, Jetson Specialty

Marketing Services, and SERV Logistics LLC.  The Court **SETS** the date of compliance to thirty

(30) days from the date of this Order.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants'

Motion to Quash (Doc. 35).  The parties are **ORDERED** to confer and file a joint status report

within fourteen (14) days, as detailed herein.

IT IS SO ORDERED.

Date:    August 26, 2025                                   /s/ Kimberly A. Jolson
                                                                    KIMBERLY A. JOLSON
                                                                    UNITED STATES MAGISTRATE JUDGE