# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHAEL SWISHER,**

    **Plaintiff,**

    v.          Case Number 2:25-cv-434
              **JUDGE EDMUND A. SARGUS, JR.**
**APEX MARKETING MANAGEMENT**    Magistrate Judge Kimberly A. Jolson
**INC.,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on two motions filed by Defendants Apex Marketing Management Inc., Scott Patterson, and Cody Stokes. (ECF Nos. 13, 14.) Defendants filed a Motion to Strike (ECF No. 13), to which Plaintiff Michael Swisher responded (ECF No. 25) and Defendants replied (ECF No. 33). Defendants also filed a Motion to Dismiss (ECF No. 14), to which Mr. Swisher responded (ECF No. 26) and Defendants replied (ECF No. 34). For the reasons set forth below, the Court **DENIES** Defendants' Motion to Strike (ECF No. 13) and **DENIES** Defendants' Motion to Dismiss (ECF No. 14).

## BACKGROUND

**I.**     **Factual Background**

The Court summarizes the facts as alleged in Mr. Swisher's Complaint because the Court accepts those allegations as true for purposes of Defendants' Motion to Dismiss.

In December 2020, Mr. Patterson, Mr. Stokes, and Mr. Swisher formed Apex Marketing Management Inc., a three-shareholder company that performs direct mail marketing. (ECF No. 1, ¶¶ 3, 10.) Mr. Patterson is the Chief Executive Officer of Apex and owns 51% of the company's shares, Mr. Stokes is the Chief Financial Officer of Apex and owns 24.5% of the company's

shares, and Mr. Swisher was the Chief Business Officer of Apex until January 3, 2025, and owns 24.5% of the company's shares. (*Id.* ¶¶ 2, 4–5.) Apex was formed with a single client, JPMorganChase ("JPMC"), which Mr. Swisher brought to the company. (*Id.* ¶ 11.) Mr. Swisher alleges that JPMC was the company's largest and most profitable account, generating just over $1,000,000 in profit for Apex in 2024. (*Id.* ¶¶ 12, 20.) In July 2023, Mr. Patterson, Mr. Stokes, and Mr. Swisher agreed to place themselves on a $200,000 annual salary each, plus disbursements. (*Id.* ¶ 17.) Disbursements were made for less than a year, and Mr. Swisher received his last disbursement in February 2024. (*Id.* ¶ 18.)

Mr. Swisher oversaw envelope production and sales, and Mr. Patterson oversaw direct mail lettershop production and sales. (*Id.* ¶ 13.) Mr. Swisher alleges that the envelope side of Apex's business was flourishing and expanding, but that the direct mail lettershop side of Apex's business had lost all but its largest account by summer 2024. (*Id.* ¶¶ 19, 21, 23.) Mr. Swisher never saw an Apex profit and loss statement, and there was never a regular meeting with all three shareholders to discuss the financial condition of the company. (*Id.* ¶¶ 14–15.) During the latter half of 2024 and the beginning of 2025, some of Apex's suppliers experienced unpaid and overdue invoices, which resulted in Apex losing JPMC's business. (*Id.* ¶¶ 31–32.)

During a call on January 3, 2025, Mr. Patterson and Mr. Stokes stated that, as a purported quorum, they had decided to terminate Mr. Swisher's employment. (*Id.* ¶ 28.) The last salary payment Mr. Swisher received was $18,000 on December 17, 2024, for services rendered in November 2024. (*Id.* ¶ 29.) Mr. Swisher alleges that he has not been paid the $18,000 he is owed for services rendered in December 2024. (*Id.* ¶ 30.)

In February 2025, counsel for Mr. Swisher sent a letter to Apex demanding that the company remit $18,000 to Mr. Swisher for his work in December 2024; requesting books and

2

records pursuant to Ohio law, including Apex's 2023 and 2024 annual shareholder reports; and expressing Mr. Swisher's interest in selling his Apex shares. (*Id.* ¶¶ 33, 55.) Apex denied Mr. Swisher's request for documents on the grounds that the request failed to state a specific purpose and was not made in good faith. (*Id.* ¶ 37.) On April 8, 2025, Mr. Swisher renewed his books and records request with the specific purpose of ascertaining Apex's financial condition and determining the rationale for and process behind the decision to terminate his employment and withhold payment. (*Id.* ¶¶ 41, 47.) Apex rejected Mr. Swisher's request for a second time. (*Id.* ¶ 42.)

## II. Procedural Background

Mr. Swisher filed this lawsuit in April 2025 against Defendants Apex, Patterson, and Stokes. (ECF No. 1.) Mr. Swisher asserts five claims: Denial of Access to Books and Records in violation of Ohio Revised Code § 1701.37 against all Defendants (Count I), Denial of Annual Financial Statements in violation of Ohio Revised Code § 1701.38 against all Defendants (Count II), Unjust Enrichment against all Defendants (Count III), Breach of Fiduciary Duty against Defendants Patterson and Stokes (Count IV), and Declaratory Judgment against all Defendants (Count V). (*Id.*) The Complaint alleges that this Court has diversity jurisdiction over Mr. Swisher's claims pursuant to 28 U.S.C. § 1332. (*See id.* ¶ 6.)

In June 2025, Defendants moved to strike certain paragraphs and exhibits from Mr. Swisher's Complaint pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 13.) Defendants also moved to dismiss Mr. Swisher's Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). (ECF No. 14.) Mr. Swisher responded in opposition to both motions (ECF Nos. 25, 26), and Defendants replied in support (ECF Nos. 33, 34). Defendants' Motion to Strike and Motion to Dismiss are now ripe for review.

**DEFENDANTS' MOTION TO DISMISS**

Defendants move to dismiss Mr. Swisher's Complaint under Rule 12(b)(1) for failure to satisfy the jurisdictional amount in controversy and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 14.) The Court addresses each argument in turn.

**I.      Federal Rule of Civil Procedure 12(b)(1)**

**A.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction are either facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself, and the court accepts the allegations in the complaint as true. *Id.* To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). On the other hand, a factual attack challenges the factual existence of subject matter jurisdiction and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Ritchie*, 15 F.3d at 598; *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

**B.      Analysis**

Defendants move to dismiss this lawsuit pursuant to Rule 12(b)(1), arguing that the Complaint's allegations do not plausibly exceed the $75,000 amount in controversy threshold for diversity jurisdiction. (ECF No. 14, PageID 88–90.)

A federal court has original diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

28 U.S.C. § 1332(a). "To defeat diversity jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "Generally, the amount claimed by the plaintiff in the complaint rules, as long as claimed in good faith." *Id.* Dismissal is proper if the amount alleged in the complaint was never recoverable in the first instance, such as where applicable law bars the type of damages sought by the plaintiff. *Id.*

In his Complaint, Mr. Swisher states that the amount in controversy exceeds $75,000 and asks for general, special, compensatory, punitive, and exemplary damages in an amount greater than $75,000. (ECF No. 1, PageID 2, 13.) Defendants acknowledge that Mr. Swisher seeks $18,000 for allegedly unpaid compensation, hundreds of dollars related to his claims for access to company records, and compensation for his 24.5% ownership interest in Apex, but posit that these damages do not total $75,000. (ECF No. 14, PageID 90.) In response, Mr. Swisher argues that he is owed "any lost share of corporate profits to which Defendants denied him fair access, which—given the substantial profits and his 24.5% interest in the company—well exceed $75,000." (ECF No. 26, PageID 213.)

Through his breach of fiduciary duty claim, Mr. Swisher seeks monetary damages for lost payroll earnings, lost disbursements, and lost profits. (ECF No. 1, ¶¶ 69–71.) Ohio courts permit minority shareholders to recover profits that they are entitled to through a breach of fiduciary duty claim. *Daly v. Rowe*, 199 N.E.3d 237, 245 (Ohio Ct. App. 1st Dist. 2022); *Yackel v. Kay*, 642 N.E.2d 1107, 1110 (Ohio Ct. App. 8th Dist. 1994). Mr. Swisher alleges that, before his termination in January 2025, parts of Apex were "flourishing." (ECF No. 1, ¶ 19.) For example, envelope sales and production experienced "continued profits" and the JPMC account generated

over $1,000,000 in profit in 2024 for Apex. (*Id.* ¶¶ 20, 24.) Despite this, Mr. Swisher received his last disbursement in February 2024 and alleges that Mr. Patterson and Mr. Stokes historically denied him disbursements. (*Id.* ¶¶ 18, 69.) Mr. Swisher says that these facts are sufficient to support his allegation that the amount in controversy exceeds $75,000. (ECF No. 26, PageID 212–13.) The Court agrees. Defendants criticize Mr. Swisher's position as "speculative," but do not argue that Mr. Swisher is legally barred from recovering these damages. (*See* ECF No. 34, PageID 281–82.)

It does not appear to a legal certainty that Mr. Swisher's claims are for damages less than $75,000, nor does it appear that Mr. Swisher alleged the amount in controversy in bad faith, so Defendants' request to dismiss this action due to lack of subject matter jurisdiction is denied.

## II. Federal Rule of Civil Procedure 12(b)(6)

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true,

'[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Analysis

#### 1. Count I – Denial of Access to Books and Records Under Ohio Law

Defendants move to dismiss Mr. Swisher's claim that they violated Ohio Revised Code § 1701.37 by denying him access to Apex's books and records. (ECF No. 14, PageID 90–92.) A shareholder's right to inspect and copy the shareholder records of an Ohio corporation is governed by Ohio Revised Code § 1701.37(C), which provides:

> Any shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof.

Defendants contend that Mr. Swisher's requests for books and records lacked a specific and proper purpose and were made in bad faith. (ECF No. 14, PageID 91–92.) The Ohio Supreme Court has explained that, for a shareholder to exercise his right of inspection, "[n]othing more is required than that, acting in good faith for the protection of the interests of the corporation *and his own interests*, he desires to ascertain the condition of the corporation's business." *Lake v. Buckeye Steel Castings Co.*, 206 N.E.2d 566, 569 (Ohio 1965); *see also Carlson v. Rabkin*, 789 N.E.2d 1122, 1129 (Ohio Ct. App. 1st Dist. 2003).

Here, Mr. Swisher requested books and records from Apex on February 11, 2025, and renewed his request on April 8, 2025, clarifying that he seeks documents to "ascertain the condition of Apex's business, as well as the reasoning and process supporting his termination and the withholding of payment for services rendered." (ECF No. 1, ¶¶ 33–34, 41–42; ECF No. 1-1; ECF No. 1-4.) So, Mr. Swisher included a reasonable and proper purpose when requesting

7

documents. *See Celina Mut. Ins. Co. v. Am. Druggists Ins. Co.*, 369 N.E.2d 1066, 1068–69 (Ohio Ct. App. 1st Dist. 1977) (holding that "securing information as to the details of the business . . . and the status of its affairs, investigating whether there are any improprieties in its management and operation, and communicating with other shareholders regarding the affairs" are proper purposes).

Defendants also argue that dismissal is warranted because Mr. Swisher asked Defendants to comply with his books and records requests within one week. (ECF No. 14, PageID 90–91.) Defendants cite *Davis v. DCB Financial Corporation*, 259 F. Supp. 2d 664 (S.D. Ohio 2003) (Graham, J.), as support. There, the plaintiff alleged that he was denied access to books and records "at the time of his choosing," and the Court rejected that claim because the plaintiff did not allege that the deadlines for compliance—seven days in one instance and five days in another—were reasonable. *Id.* at 677. Notably, the plaintiff in *Davis* "did not allege in his complaint that he was denied all access to . . . books and records." *Id.* Although Mr. Swisher included similar deadlines in his letters to Apex, Mr. Swisher's claim is distinct because it is based on Apex's failure to produce books and records altogether, not Apex's failure to produce books and records by a certain deadline. (ECF No. 1, ¶¶ 37, 42, 49.)

Mr. Swisher has sufficiently alleged a claim for denial of access to books and records under Ohio Revised Code § 1701.37 and the Court denies Defendants' request to dismiss Count I.

> 2. **Count II – Denial of Annual Financial Statements Under Ohio Law**

Defendants move to dismiss Mr. Swisher's claim that they violated Ohio Revised Code § 1701.38 by denying him access to Apex's 2023 and 2024 annual shareholder reports. (ECF No. 14, PageID 92–93.)

8

Ohio Revised Code § 1701.38 provides that "[u]pon request of any shareholder made in writing . . . prior to the date of the [annual meeting of shareholders] . . . the corporation shall send a copy of any financial statements, written statements, and reports, as applicable, laid or to be laid before the shareholders at the meeting to the shareholder" within a certain timeframe. Ohio Rev. Code. § 1701.38(A), (C). Mr. Swisher alleges that he is a shareholder of Apex; he requested documents, including the 2023 and 2024 annual shareholder reports, from Apex in writing on February 11, 2025, and April 8, 2025; and Defendants rejected those requests. (ECF No. 1, ¶¶ 2, 33, 37, 41, 42, 55, 56.)

Defendants argue that Count II must fail because no annual meeting had been scheduled when Mr. Swisher requested Apex's shareholder reports and Mr. Swisher's requests imposed unreasonably short deadlines. (ECF No. 14, PageID 92–93.) But defendants are "not entitled to avoid the mandate of R.C. 1701.38 as to financial statements by failing formally to schedule meetings and give plaintiff notice thereof." *Cousins v. Brownfield*, 615 N.E.2d 1064, 1067 (Ohio Ct. App. 10th Dist. 1992); *cf. McConnell v. Bare Label Prods., Inc.*, No. 2013-T-0050, 2015 WL 1432464, at *6 (Ohio Ct. App. 11th Dist. Mar. 31, 2015). Thus, the Court declines to dismiss Mr. Swisher's claim under Ohio Revised Code § 1701.38 on that ground. And, for the reasons discussed above, the deadlines associated with Mr. Swisher's requests do not warrant dismissal. The Court denies Defendants' request to dismiss Count II.

### 3. Count III – Unjust Enrichment

In Count III, Mr. Swisher asserts an unjust enrichment claim arising out of Defendants' alleged failure to pay him $18,000 for services rendered to Apex in December 2024. (ECF No. 1, ¶¶ 59–64.) Defendants argue that this claim fails because Mr. Swisher admits an express agreement set his compensation at $18,000 per month and exhibits attached to the Motion to

9

Dismiss confirm Apex paid Mr. Swisher in full. (ECF No. 14, PageID 93.) Mr. Swisher responds that he sufficiently alleged an unjust enrichment claim and asks the Court to refrain from considering the exhibits at this time. (ECF No. 26, PageID 219–20.)

A claim for unjust enrichment "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (quoting *Hummel v. Hummel*, 14 N.E.2d 923, 925–26 (Ohio 1938)). To state a claim for unjust enrichment, a plaintiff must allege "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Id.*

On the face of the Complaint, Mr. Swisher has plausibly alleged an unjust enrichment claim. Mr. Swisher alleges that he worked for Apex during December 2024; he has not been paid the $18,000 he is owed for that work; his work conferred benefits on Apex, such as managing the company's JPMC account; and Defendants' refusal to pay him resulted in their unjust enrichment. (ECF No. 1, ¶¶ 27, 60–64.) According to Defendants, Mr. Swisher's allegation that Mr. Patterson, Mr. Stokes, and Mr. Swisher agreed to place themselves on a $200,000 annual salary shows that an express agreement exists and precludes him from pursuing an unjust enrichment claim. (ECF No. 1, ¶ 17; ECF No. 34, PageID 283.) But Mr. Swisher also alleges that he "had no employment agreement with Apex." (ECF No. 1, ¶ 36.) At this early stage of litigation, when the Court must accept the factual allegations in the Complaint as true and draw reasonable inferences in favor of Mr. Swisher, the Court finds that Mr. Swisher has not alleged the existence of an express contract such that his unjust enrichment claim is barred.

Defendants attached four exhibits to their Motion to Dismiss: three bank statements and a termination letter addressed to Mr. Swisher. (ECF No. 14, PageID 99–107.) Defendants say these documents confirm Apex paid Mr. Swisher for his work in December 2024. (*Id.* PageID 93.) Mr. Swisher characterizes the exhibits as unauthenticated and ambiguous, and argues that considering them would convert Defendants' Motion to Dismiss into a motion for summary judgment. (ECF No. 26, PageID 209–10, 219–20.)

"When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Mr. Swisher's Complaint does not mention the bank statements or termination letter that Defendants attach to their Motion to Dismiss. Even if the Court were to consider these documents, though, its decision would not change. With respect to the bank statement exhibits, the Court cannot determine who sent or received the payments or why the payments were issued. (*See* ECF No. 14, PageID 99–104.) The exhibits are not accompanied by a declaration or affidavit providing this context. The fourth exhibit—a termination letter to Mr. Swisher—discusses Apex's intent to pay Mr. Swisher for three days of work in January 2025, but does not confirm that this payment occurred and does not address payment to Mr. Swisher for work in December 2024. (*See id.* PageID 106–07.) As such, the documents attached to Defendants' Motion to Dismiss do not justify dismissing Mr. Swisher's unjust enrichment claim at this time.

The Court denies Defendants' request to dismiss Count III.

### 4. Count IV – Breach of Fiduciary Duty

In Count IV, Mr. Swisher alleges that Mr. Patterson and Mr. Stokes took advantage of their majority control of Apex and did not provide Mr. Swisher with an equal opportunity to benefit, thereby breaching their fiduciary duty to Mr. Swisher. (ECF No. 1, ¶¶ 65–71.) Defendants move to dismiss this count, arguing that Mr. Swisher cannot assert this claim as a direct action, which he has done here, and must do so through a derivative action instead. (ECF No. 14, PageID 94–95.) Mr. Swisher counters that Ohio law permits him to pursue his breach of fiduciary duty claim directly. (ECF No. 26, PageID 221–24.)

#### i. Close Corporation

A heightened fiduciary duty exists between majority and minority shareholders in a close corporation. *Crosby v. Beam*, 548 N.E.2d 217, 220–21 (Ohio 1989). Here, Defendants argue that "Apex is not a statutorily recognized close corporation" because the shareholders did not execute a Close Corporation Agreement pursuant to Ohio Revised Code § 1701.591. (ECF No. 14, PageID 94.) In Ohio, a close corporation is defined as "a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market." *Crosby*, 548 N.E.2d at 220. Corporate entities that meet these criteria but have not adopted a close corporation agreement are still considered close corporations. *Duggan v. Orthopaedic Inst. of Ohio, Inc.*, No. 3:03 CV 7651, 2004 WL 951469, at *2 (N.D. Ohio Apr. 8, 2004) (collecting cases). As such, the Court is unpersuaded by Defendants' argument that Apex does not qualify as a close corporation simply because it has not executed a close corporation agreement. The Complaint sufficiently alleges that Apex is a close corporation in that it has a few shareholders (three) and its corporate shares are not generally traded on a securities market. (*See* ECF No. 1, ¶¶ 10, 33, 39; ECF No. 1-3, PageID 25.)

### ii. Majority or Controlling Shareholders

Next, Defendants argue that Mr. Swisher may not bring a direct action because both Mr. Stokes and Mr. Swisher are minority shareholders. (ECF No. 14, PageID 94–95.)

In Ohio, minority shareholders may bring a breach of fiduciary duty claim through a direct action against majority or controlling shareholders in a close corporation. *Crosby*, 548 N.E.2d at 221. In addition, "Ohio courts impose heightened fiduciary duties on minority shareholders when they dominate [the] corporation to the exclusion of other minority shareholders." *Duggan*, 2004 WL 951469, at *1–2 (finding that shareholders qualify as controlling when they act collectively to exert complete control over the company and terminate another shareholder); *see also McLaughlin v. Beeghly*, 617 N.E.2d 703, 705 (Ohio Ct. App. 10th Dist. 1992) ("Typically, cases addressing a dominant shareholder's [fiduciary duty] involve factual situations where a single majority shareholder, or coalition group of minority shareholders, manipulate corporate procedures for their own advantage by exercising domina[nt] control."); *Vontz v. Miller*, 111 N.E.3d 452, 461 (Ohio Ct. App. 1st Dist. 2016) (noting that a heightened fiduciary duty applies when one shareholder exercises "control over the corporation to an extent that [the shareholder's] actions dominate" even though the shareholder is "not technically a majority owner").

Mr. Patterson is a majority shareholder of Apex who owns a 51% share. (ECF No. 1, ¶ 4.) Although Mr. Stokes is a minority shareholder of Apex who owns a 24.5% share, Mr. Swisher alleges that Mr. Patterson and Mr. Stokes formed a controlling majority, used that control to their advantage, did not provide Mr. Swisher an equal opportunity to benefit, and isolated and injured him. (*Id.* ¶¶ 1, 5, 66, 68.) The Complaint states that Mr. Stokes aligned with Mr. Patterson as a controlling majority to terminate Mr. Swisher and deny him access to

13

corporate records. (*Id.* ¶ 66.) Mr. Swisher also alleges that Mr. Stokes historically acted as Mr. Patterson's right-hand man. (*Id.*) At this stage in the litigation, these statements are sufficient to show that Mr. Patterson and Mr. Stokes were majority or controlling shareholders against whom a breach of fiduciary duty claim may be asserted.

### iii. Separate and Distinct Injury

Next, Defendants argue Mr. Swisher may not bring a direct action because he did not allege that he suffered an injury separate from that of the company. (ECF No. 14, PageID 95.) "[I]f the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action." *Crosby*, 548 N.E.2d at 219. In other words, when the harm to a minority shareholder "can be construed to be individual in nature, then a suit by a minority shareholder against the offending majority or controlling shareholders may proceed as a direct action." *Id.* at 221.

Here, Mr. Swisher alleges harm that is individual in nature, including that controlling shareholders of Apex removed him from the company's payroll and denied him disbursements from the company's profits. (ECF No. 1, ¶ 69); *Heaton v. Rohl*, 954 N.E.2d 165, 175–76 (Ohio Ct. App. 11th Dist. 2011) (concluding that "[t]he cause of action was appropriately brought as a direct action" because the defendant deprived "the sole remaining shareholder, of both his equal share in the company and his employment"); *Yackel*, 642 N.E.2d at 1110 (explaining that a shareholder may bring a direct action to pursue relief for being wrongfully discharged and deprived of his share of corporate profits). Requiring Mr. Swisher to bring his breach of fiduciary duty claim as a derivative action would not be "an effective remedy" in this case because "any recovery would accrue to the corporation and remain under the control of the very

14

parties who are defendants in the litigation." *Crosby*, 548 N.E.2d at 221. Therefore, this lawsuit may proceed as a direct action.

### iv. Procedural Exhaustion Requirements

Finally, Defendants argue that Mr. Swisher's failure to pursue internal remedies and comply with procedural requirements in Ohio Rule of Civil Procedure 23.1 before filing suit warrants dismissal. (ECF No. 14, PageID 95.) Those requirements apply to derivative actions, not direct actions. *See Crosby*, 548 N.E.2d at 221 ("[C]laims of a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ.R. 23.1."). Since Mr. Swisher has plausibly alleged a breach of fiduciary duty claim that he may pursue as a direct action, this argument fails.

Accordingly, the Court denies Defendants' request to dismiss Count IV.

### 5. Count V – Declaratory Judgment

In Count V of his Complaint, Mr. Swisher asserts a declaratory judgment claim, requesting that this Court find and declare that Defendants acted with bad faith and malice. (ECF No. 1, ¶¶ 72–76.) As an initial matter, the Complaint does not clarify whether Mr. Swisher seeks declaratory judgment under federal or state law. In response to Defendants' Motion to Dismiss, Mr. Swisher cites the federal Declaratory Judgment Act, 28 U.S.C. § 2201. (ECF No. 26, PageID 224–26.)

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare

15

the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). When deciding whether to exercise this discretion, courts in the Sixth Circuit apply five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Defendants state summarily that all five factors weigh in favor of dismissal and the declaratory judgment claim is redundant and non-justiciable. (ECF No. 14, PageID 95–96.) Mr. Swisher disagrees on each of those points, arguing that the declaratory action would clarify "whether Defendants will be liable for punitive damages and/or attorney's fees should Plaintiff prevail on his other claims;" the declaratory remedy is "limited to Defendants' actions in the instant action," so it is not sought to obtain res judicata in another proceeding; the declaratory action will not encroach upon state jurisdiction because it "is joined with other claims that are properly before this Court pursuant to 28 U.S.C. § 1332(a);" and a "determination of Defendants' bad faith and actual or implied malice is not a necessary element of any of the other claims." (ECF No. 26, PageID 224–26.)

The Court declines to dismiss Mr. Swisher's declaratory judgment claim at this early stage of litigation based on the undeveloped arguments in Defendants' Motion to Dismiss. Defendants may re-raise their arguments in more detail on summary judgment. The Court denies Defendants' request to dismiss Count V.

## DEFENDANTS' MOTION TO STRIKE

Defendants move to strike Paragraphs 39 and 40 and Exhibits 3 and 5 from Mr. Swisher's Complaint pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 13.) Defendants argue

16

that each of those paragraphs and exhibits reference confidential settlement negotiations and are inadmissible under Federal Rule of Evidence 408 and Local Civil Rule 16.3(c). (*Id.*)

**I.     Legal Standard**

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally disfavored, and the resolution of such motions is reserved to the sound discretion of the trial court." *Wausau Benefits v. Progressive Ins. Co.*, 270 F. Supp. 2d 980, 985 (S.D. Ohio 2003) (King, M.J.). The Sixth Circuit has noted that "the action of striking a pleading should be sparingly used by the courts," "resorted to only when required for the purposes of justice," and "only when the pleading to be stricken has no possible relation to the controversy." *Barkley v. Nationwide Agribusiness Ins. Co.*, No. 2:22-cv-4458, 2024 WL 1142177, at *2 (S.D. Ohio Mar. 15, 2024) (Marbley, C.J.) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

Federal Rule of Evidence 408 provides:

(a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim . . .

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

II.   **Analysis**

In their Motion to Strike, Defendants ask the Court to strike Paragraphs 39 and 40 and Exhibits 3 and 5 from the Complaint or, in the alternative, strike or redact a portion of Exhibits 3 and 5 from the Complaint and record. (ECF No. 13.) Defendants contend that these paragraphs and exhibits reference confidential settlement negotiations, which are inadmissible under Rule 408 and Local Rule 16.3(c).[1] (*Id.*) In response, Mr. Swisher argues that striking allegations and exhibits from the Complaint is inappropriate at this early stage of litigation because the Court cannot yet determine the admissibility of those materials. (ECF No. 25, PageID 201–03.) Mr. Swisher also states that the communications are not barred by Rule 408 because they were not part of settlement negotiations and, even if they were, they are relevant for reasons other than proving or disproving the validity or amount of a disputed claim. (*Id.* PageID 203–04.)

Before this litigation ensued, the Parties exchanged letters in which Mr. Swisher demanded to be paid for his work in December 2024, requested books and records, and expressed interest in selling his Apex shares, and Defendants responded to those points. (ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5.) In two letters, Defendants offered to purchase Mr. Swisher's interest in Apex for $2,000. (ECF Nos. 1-3, 1-5.) Defendants now move to strike the paragraphs in the Complaint and exhibits that reference those offers.

At this preliminary stage, the Court cannot conclude that the challenged paragraphs and exhibits are inadmissible under Rule 408. "For Rule 408 to be applicable, the Court must first

---

[1] Under Local Civil Rule 16.3, "evidence of conduct or statements made in settlement negotiations is not admissible to prove liability for or the invalidity of a claim or its amount in the case in which the settlement negotiations occur." S.D. Ohio Civ. R. 16.3. Local Civil Rule 16.3 refers to settlement negotiations that occur while litigation is pending. Here, the disputed communications took place before litigation began. Even if Local Civil Rule 16.3 were to apply, the Court would reach the same result given the similarities between Local Civil Rule 16.3 and Federal Rule of Evidence 408.

18

determine that compromise negotiations were in fact happening." *Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 237, 242 (S.D. Ohio 1987) (Merz, M.J.). The Court agrees with Mr. Swisher that it is not clear yet whether the communications in dispute were made in the context of compromise negotiations. The Complaint and exhibits demonstrate that Apex offered $2,000 to repurchase Mr. Swisher's shares but do not address whether that offer was made as an attempt to resolve Mr. Swisher's claims and do not reference forthcoming litigation. (ECF No. 1, ¶¶ 39, 40; ECF No. 1-3; ECF No. 1-5.)

In addition, "Rule 408 [is] inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Fed. R. Evid. 408 advisory committee's note to 2006 amendment. Mr. Swisher has suggested uses for this evidence other than to prove the validity of his claims or the amount of his damages. Mr. Swisher argues that he could offer the communications to show that Defendants denied his request for books and records to prevent him from valuing his shares in Apex and prompt him to accept a nominal offer for his 24.5% interest in the company, which could be relevant to Mr. Swisher's ability to collect punitive damages and attorney's fees. (ECF No. 25, PageID 204.)

Before Mr. Swisher has presented evidence related to Defendants' offer to purchase his shares in Apex for a particular purpose, the Court cannot conclude that there is no admissible purpose for this evidence. *Tirone v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 20-cv-02807-SHM, 2021 WL 1206413, at *9 (W.D. Tenn. Mar. 30, 2021); *Tobin v. InterLinc Mortg. Servs., LLC*, No. 3:24-cv-329, 2025 WL 1207775, at *7 (W.D. Ky. Apr. 25, 2025). The Court will not strike or redact Paragraphs 39 and 40 or Exhibits 3 and 5 from the Complaint or the record at this time. Other opportunities remain to seek exclusion of the challenged evidence prior to the commencement of trial.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** (ECF No. 13) Defendants' Motion to Strike and **DENIES** (ECF No. 14) Defendants' Motion to Dismiss.

This case remains open.

**IT IS SO ORDERED.**

**3/11/2026**                                                      **s/Edmund A. Sargus, Jr.**
**DATE**                                                            **EDMUND A. SARGUS, JR.**
                                                                        **UNITED STATES DISTRICT JUDGE**